UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/7/12
```

---------------------------------------------------

PATRICK CAMPBELL,

                    **Plaintiff,**     :

                        :

         **- against -**         :

                        :

                        :

CELLCO PARTNERSHIP d/b/a/
VERIZON WIRELESS, INC.,

                        :

                **Defendant.**    :

--------------------------------------------------- X

**OPINION AND ORDER**

**10 Civ. 9168 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

Patrick "Tony" Campbell brings this diversity action against Cellco Partnership, d/b/a Verizon Wireless, Inc. (hereinafter "Verizon"),[1] alleging claims of racial discrimination and retaliation under the New York State Human Rights Law ("NYSHRL")[2] and the New York City Human Rights Law ("NYCHRL").[3]

---

[1]    The action was initially filed against Verizon and Patrick Devlin as an individual, but on December 30, 2010, the parties stipulated to the voluntary dismissal of Devlin pursuant to Fed. R. Civ. P. 41(a)(1)(ii).

[2]    NY. Exec. Law § 296, *et seq.*

[3]    N.Y.C. Admin. Code § 8-107(1)(a).

Campbell is an African-American and a citizen of New York.[4]  Verizon is a

Delaware corporation, with its principal place of business in New Jersey.[5]  Verizon

now moves for partial summary judgment dismissing plaintiff's discrimination

claims under Rule 56(c) of the Federal Rules of Civil Procedure.  For the following

reasons, defendant's motion is granted and the discrimination claims are dismissed.

## II.    BACKGROUND[6]

### A.    Undisputed Facts

Plaintiff began his career at Verizon in 2000 as a store manager.[7]

Beginning in 2001, plaintiff received both negative and positive feedback on his

performance appraisals.  The positive comments included compliments in 2002

that he was the "hardest working store manager"[8] and in 2004 on his "year over

---

[4]      *See* Amended Complaint ("Am. Compl.") ¶ 1.

[5]      *See id.* ¶ 2.

[6]      The following facts are derived from the Amended Complaint and
from the parties' Rule 56.1 statements and supporting documents.  The facts are
undisputed unless otherwise noted; where disputed, they are construed in the light
most favorable to the plaintiff.  *See, e.g.*, *Federal Ins. Co. v. American Home
Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

[7]      *See* Am. Compl. ¶ 10.

[8]      Campbell's Answer to Defendant's Rule 56.1 Statement of Material
Facts ("Pl. 56.1") ¶ 7.

year growth."[9]  The negative feedback focused on his brash management style,

including a comment in 2001 that plaintiff "must observe staff and give positive

feedback" and a "Final Written Warning" in 2002 for using "abusive and

threatening language toward an employee."[10]  In 2006, plaintiff's supervisor told

him that his staff found him "unapproachable."[11]  When he challenged these

complaints about his management ability in an email sent to the Human Resources

Department ("HR"), plaintiff was told that the concerns raised by his colleagues

were a "consistent theme that we have heard over time."[12]

　　　　　In 2005, plaintiff applied for, but was not awarded, the position of

District Manager ("DM") for Verizon's Manhattan stores; instead, he became the

DM of the Westchester/Putnam Zone.[13]  In 2006, plaintiff began reporting to Kevin

Zavaglia (a Caucasian)[14] and, in April of 2006, plaintiff became the DM of the

---

[9]　　　*Id.* ¶ 14.

[10]　　　Verizon's Rule 56.1 Statement of Undisputed Facts ("Def. 56.1") ¶ 7.

[11]　　　*Id.* ¶ 19.

[12]　　　4/28/06 Email from Annette Lowther (an HR employee) to Campbell (4:47 PM), Ex. 2 to Declaration of Lisa E. Dayan, defendant's counsel, in Support of Motion for Partial Summary Judgment ("Dayan Decl.").

[13]　　　*See* Def. 56.1 ¶ 16.  The position of Manhattan DM was given to Frank Campbell, a Caucasian unrelated to plaintiff.  *See* Pl. 56.1 ¶ 15.

[14]　　　*See* Def. 56.1 ¶ 18.

Brooklyn and Queens Zone.[15]  John McCarthy (a Caucasian), replaced plaintiff as

DM of the Westchester/Putnam Zone.[16]  In January 2008, Patrick Devlin (a

Caucasian) was hired as Regional President[17] and, in March 2008, Devlin

interviewed plaintiff for the Director of Regional Sales position — the supervisor

of the DM's[18] — but hired Michael Scribner (an African-American) for the

position instead.  That same month, plaintiff's staff tampered with the Net

Promoter Scores ("NPS") in order to increase the customer service ranking for

their stores.[19]  Scribner spoke to plaintiff about this incident and was "very angry

and yelling."[20]  Plaintiff's performance appraisal for 2008 was "largely positive,"

but included familiar concerns "voiced by some of the members of Tony's team

about the means in which he communicates with them."[21]

---

[15]     See id. ¶ 22.

[16]     See id. ¶ 23.  Plaintiff alleges that McCarthy was an employee used by
defendant to "take care of any messy situation" including taking "action to squelch
[] union activity."  Am. Compl. ¶¶ 34-35.

[17]     See Def. 56.1 ¶ 24.

[18]     See id. ¶ 25.

[19]     See id ¶ 30.  NPS are customer satisfaction surveys.  Plaintiff's staff
allegedly "fill[ed] out [the] customer surveys themselves."  Id.

[20]     Pl. 56.1 ¶ 30.  While plaintiff pleads a hostile work environment
claim, this is the only instance of any such hostility evident in the record.

[21]     Def. 56.1 ¶ 32.

In 2009, plaintiff accepted a transfer to the position of DM of Zone 9, in Manhattan.[22]  In early 2009, after Circuit City filed for bankruptcy, Verizon laid off its "lowest performing employees" and froze hiring.[23]  From January to June 2009, plaintiff "consistently ranked in the lower half of the DM's" on the sales score cards.[24]  Citing his lack of "necessary skills to manage the Manhattan stores"[25] and "complaints about [p]laintiff from members of his staff,"[26] Scribner transferred plaintiff from his position as DM of Manhattan, Zone 9, back to DM of Brooklyn and Queens, where he replaced Tomas Cain (a Caucasian).[27]  Khurram Zyed (an Arab-American) replaced plaintiff as DM of Manhattan, Zone 9.[28]

For the first three months as DM of Queens and Brooklyn, plaintiff ranked eleventh out of sixteen DM's in July 2009, thirteenth out of sixteen DM's in August 2009, and eleventh out of sixteen DM's in September 2009.[29]  Plaintiff

---

[22]   *See id.* ¶ 35.

[23]   *Id.* ¶ 59.

[24]   *Id.* ¶ 69.

[25]   *Id.* ¶ 72.

[26]   *Id.* ¶ 70.

[27]   *See id.* ¶ 72.

[28]   *See id.* ¶ 73.

[29]   *See id.* ¶ 77.

5

made informal complaints about being understaffed,[30] but he "never made a written request to the Incentive Review Board (IRB) for quota relief."[31]  During this time Scribner "received more complaints from members of [p]laintiff's staff,"[32] but plaintiff "was not disciplined in any way at the time . . . ."[33]

In the middle of September 2009, Scribner emailed Marielena McDonald (an HR employee) seeking to demote plaintiff.[34]  Scribner attached a letter outlining his reasons, which included complaints about plaintiff's management style and that his NPS scores were the "lowest;" and that his "Year over Year growth" was the lowest of all DM's in the same portion of the New York Metro Area.[35]  Scribner's request was denied.  However, Nancy Percent (an HR employee) expressed "concern that nothing more formal was ever delivered to

---

[30]    *See id.* ¶ 64.

[31]    *Id.*

[32]    *Id.* ¶ 78.

[33]    Pl. 56.1 ¶ 78.

[34]    *See* 9/18/09 Email from Scribner to McDonald (10:33 AM), Ex. 12 to Declaration of Lisa E. Dayan, defendant's counsel, in Support of Motion for Summary Judgment ("Dayan Decl.").

[35]    Def. 56.1 ¶ 82.

Tony" even though she had "heard about these concerns for months."[36]

Around the same time, Devlin and his supervisor, David Small, paid a surprise visit to one of plaintiff's stores.[37]  After an employee was unable to answer questions about the store's NPS, plaintiff was placed on an NPS specific Performance Improvement Plan ("PIP").[38]  While Devlin was copied on the letter discussing the NPS PIP, it was sent by Scribner.[39]  Plaintiff met with Scribner in October 2009 to discuss the NPS PIP but he refused to sign it.[40]  After that meeting, plaintiff met with Lambert to complain about racial discrimination.[41]  This was the first time plaintiff lodged an official complaint with Lambert.[42]

In mid-October 2009, Scribner (in consultation with plaintiff, Lambert, and McDonald), drafted an Overall 30-day PIP for plaintiff.[43]  During

---

[36]     9/29/09 Email from Percent to Eileen Lambert (an HR employee) (5:25 PM), Ex. 12 to Dayan Decl.

[37]     *See* Def. 56.1 ¶ 88.

[38]     *See id.* ¶ 93.

[39]     *See* Letter from Scribner to Campbell, Ex. 9 to Dayan Decl.

[40]     *See* Def. 56.1 ¶ 95.

[41]     *See id.* ¶ 96.

[42]     *See id.*

[43]     *See id.* ¶¶ 100-103.

this time, Scribner accepted the position of Director for the Northeast Area[44] and McCarthy was hired as Scribner's replacement.[45]  On October 30, 2009, McCarthy and Lambert placed plaintiff on the Overall 30-day PIP.[46]  In November 2009, plaintiff was "given a Final Written Warning for divulging confidential information" about another employee's demotion.[47]  At the end of November, the 30-day PIP was extended another thirty days.[48]  Plaintiff ranked first out of sixteen DM's in November 2009[49] and fifteenth out of sixteen DM's in December 2009.[50]

In December 2009, plaintiff's Performance Appraisal ranked him as "developing," the lowest possible score.[51]  Plaintiff was warned that he would be placed under a Final PIP because he had "failed to reach [his] sales quota and . . . his growth performance was the lowest in the region."[52]  Plaintiff met at least some

---

[44]     *See* Deposition of Michael Scribner ("Scribner Dep.") at 82:8-9.

[45]     *See* Def. 56.1 ¶ 107.

[46]     *See id.* ¶ 109.

[47]     *Id.* ¶ 110.

[48]     *See id.* ¶ 112.

[49]     *See* Pl. 56.1 ¶ 112.

[50]     *See* Def. 56.1 ¶ 115.

[51]     *Id.* ¶ 118.

[52]     *Id.* ¶¶ 119-120.

of his Management by Objective ("MBO") goals each quarter of 2009,[53] but the MBO metric is not "a measure of overall performance" and does not "measure a DM in comparison with his/her peers in the Region."[54]  In his Affidavit, McCarthy explains that "a DM could have been doing very poorly and below the region average . . . but still get the full MBO payment goal by showing 3% improvement over his/her own score . . . even if [those] results were still below the regional average."[55]

In January 2010, plaintiff went on leave to care for his sick father and was not placed on the Final PIP until he returned in April 2010.[56]  The letter placing plaintiff on the Final PIP cites his Zone's performance in the first three months of 2010 — the time he was on leave.[57]  On August 2, 2010, plaintiff was terminated for failing to meet the goals that were set in the Final PIP.[58]

---

[53]    *See* Defendant's Reply in Further Support of Motion for Partial Summary Judgment ("Def. Reply") at 10.

[54]    12/06/11 Affidavit of John McCarthy, Verizon Director of Retail Sales for the New York Metro Area, in Support of Defendant's Motion for Summary Judgment ("McCarthy Aff.") ¶ 29.

[55]    *Id.* ¶ 30.

[56]    *See* Def. 56.1 ¶ 121.

[57]    *See* 4/21/10 Letter from McCarthy to Campbell, Ex. 15 to Dayan Decl.

[58]    *See* Def. 56.1 ¶¶ 124-125.

9

B.      **Disputed Facts**

1.      **Plaintiff's Version**

Campbell does not deny the general time line of events, but characterizes most of the transfers and PIPs as part of "Devlin's discriminatory plot" to have him terminated.[59]  However, some events occurred before Devlin was hired as Regional President in January 2008.  Plaintiff states that the "Final Written Warning" he received in 2002 was given after he notified HR about employees in his Zone attempting to unionize.[60]  Plaintiff states further that his transfer from Westchester to Queens in April 2006 was "retaliation for [his] . . . refusal to take action against union activities and because he was black . . . ."[61]  Plaintiff argues that the decision not to promote him to DM of Manhattan in 2005 was motivated by "discriminatory animus against" him,[62] because, although he had been characterized as "highly promotable," the position was given to Frank Campbell (a Caucasian).[63]  Plaintiff states generally that "Devlin passed him over for promotion

---

[59]      Pl. 56.1 ¶ 133.

[60]      *See id.* ¶ 14.

[61]      Am. Compl. ¶ 29.

[62]      Pl. 56.1 ¶ 15.

[63]      *Id.*

at least nine times,"[64] but does not specify these particular instances.

Plaintiff states that he was not hired for the position of Director of Regional Sales in 2008 because, when asked about integrity during his interview with Devlin, he stated that "a white Verizon Wireless employee had less integrity than [he] did."[65]  Plaintiff claims that Devlin took offense at this remark and withheld the position from him, which he views as discriminatory.[66]

Campbell claims that during the time he was DM of Manhattan, Zone 9, the reductions of staff in his zone "were more extreme"[67] than in other New York Metro Zones.  Plaintiff also states that his two "top producing stores" were taken away from him, thereby hurting his quota,[68] and that his poor performance as DM of Manhattan, Zone 9 was caused by Devlin's "plan to realign the borough by taking away lucrative stores" from his supervision.[69]

Plaintiff does not deny that his sales numbers were low, but he blames his low sales numbers on the quota system, which he claims was manipulated by

---

[64]     *Id.* ¶ 127.

[65]     *Id.* ¶ 27.

[66]     *See id.*

[67]     *Id.* ¶ 62.

[68]     *Id.* ¶ 67

[69]     *Id.* ¶ 69.

Devlin and applied "discriminatorily based on [plaintiff's] race."[70]  Plaintiff states that Devlin ordered his transfer back to Queens,[71] and that the number of employees reporting to him in Queens was unfairly reduced after his transfer to that Zone.[72]  Plaintiff also claims that his "movement to and from Manhattan was 'rigged'" by Devlin.[73]

      According to Plaintiff, Devlin ordered that he be placed on the NPS PIP in retaliation for a prior complaint of discrimination, but he does not specify when this complaint was lodged.[74]  Plaintiff claims that the NPS PIP was "ordered" by Devlin "for discriminatory reasons."[75]

      Even though October 2009 was the first time plaintiff lodged a formal complaint of race discrimination with Lambert, plaintiff states that he also complained to McDonald in June 2009 and directly to Scribner.[76]  Plaintiff states

---

[70]    Am. Comp. ¶ 47.

[71]    *See* Pl. 56.1 ¶ 74.

[72]    *See id.* ¶ 77.

[73]    *Id.* ¶ 72

[74]    *See id.*  ¶ 91.

[75]    *Id.* ¶¶ 89, 93.

[76]    *See id.* ¶ 96.

that "he raised allegations of discrimination against senior managers,"[77] and that he "never received a disciplinary action . . . until after he made race complaints in June 2009."[78]

Plaintiff claims that he was not given a true opportunity to succeed and that by the time he was placed on the PIPs, Verizon "had decided . . . that [p]laintiff would either accept a demotion or be fired."[79]  As evidence, plaintiff points to the fact that he consistently met his MBO quotas[80] and that the performance of his stores during the first quarter of 2010 was incorporated into the decision to place him under the Final PIP even though he was on leave during this time.[81]  He also states that he was not permitted to make a lateral transfer because of the PIPs he was placed on.[82]

### 2.    Defendant's Version

Defendant provided evidence that Frank Campbell was promoted to DM of Manhattan in 2005 over plaintiff because he had more seniority, having

---

[77]    *Id.* ¶ 109.

[78]    *Id.* ¶ 123.

[79]    *Id.* ¶ 124.

[80]    *See id.* ¶ 119.

[81]    *See id.* ¶ 121.

[82]    *See* Deposition of Tony Campbell ("Pl. Dep.") at 396:19-23.

worked for Verizon since 1996.[83]  Furthermore, defendant provided an email

wherein Lowther stated that plaintiff was transferred from Westchester to Queens

in order to allow him to "start fresh with a new management team and

employees."[84]  Regarding the 2008 Director of Regional Sales position, defendant

provided evidence that Scribner was employed by Verizon longer than plaintiff[85]

and that Devlin formed a "poor" impression of plaintiff during the interview.[86]

Verizon addressed four additional promotions:  in 2008, Thomas Varghese (an

Indian-American) was promoted to Director of Indirect Sales (he had five years of

relevant experience compared to less than two for plaintiff;[87] in June 2010, Frank

Campbell was promoted to Director of Telesales (plaintiff did not apply for this

position);[88] in May 2009, James Clifford was promoted to Director of Business

Sales (plaintiff did not apply for this position);[89] and in April 2010, Guiseppe

---

[83]    *See* McCarthy Aff. ¶ 6.

[84]    4/28/06 Email from Lowther to Campbell (4:47 PM), Ex. 2 to Dayan
Decl.

[85]    *See* Scribner Dep. at 8:3 (stating that he has been employed by
Verizon for "[t]hirteen and a half years.").

[86]    Deposition of Patrick Devlin ("Devlin Dep.") at 101:25.

[87]    *See* McCarthy Aff. ¶ 5.

[88]    *See id.* ¶ 6.

[89]    *See id.* ¶¶ 8-9.

Salonna was promoted to Director of Indirect Distribution (plaintiff did not apply for this position).[90]

Contrary to plaintiff's assertion that his Manhattan stores lost more employees than other New York Metro Zones, Verizon provided an affidavit stating that during this time "22 Manhattan employees were laid off, 11 from Zone 8 and 11 from Zone 9."[91]  Verizon also stated that "quotas are assigned to stores, not individual DM's."[92]  Thus, even if, as plaintiff asserts, his best stores were taken away from him, this would not hinder his ability to meet his overall quota.

During his deposition, Devlin testified that it was Scribner who decided to transfer plaintiff from Manhattan to Queens and merely informed Devlin of his choice.[93]  Defendant provided substantial evidence showing that Devlin had no influence over the quota system and that the quotas were formulated by Verizon's finance division.[94]  Defendant provided additional evidence that

---

[90]     *See id.* ¶¶ 10-11.

[91]     *Id.* ¶ 15.

[92]     Def. 56.1 ¶ 67.

[93]     *See* Devlin Dep. at 251:22-24.

[94]     *See* 9/20/11 Affidavit of Betty Simon, Verizon Associate Director of Operations in the Northeast Area, in Support of Defendant's Motion for Summary Judgment ("Simon Aff.") ¶ 16; 9/21/11 Affidavit of Russell Herman, Verizon District Manager in the New York Metro Area, in Support of Defendant's Motion for Summary Judgment ("Herman Aff.") ¶ 16.

Devlin was not involved in setting the number of employees for plaintiff's stores.[95]

Devlin further testified that the decision to discipline plaintiff over the NPS tampering incident was "up to Mike Scribner and the HR Department;"[96] Scribner testified to the same in his deposition.[97]   Defendant acknowledged that plaintiff complained to Lambert in October 2009, but stated that his complaints were non-specific and therefore HR was unable to investigate further.[98]   After Scribner's request to have plaintiff demoted, HR "recommended that [plaintiff] be placed on a written [Performance Improvement Plan]."[99]

Defendant disputes that the Final PIP was extended another month as a means to discriminate against plaintiff.   According to Verizon, to be "taken off a PIP requires consistent improvement,"[100] which plaintiff failed to show, ranking fifteenth out of sixteen DM's in December 2009.[101]   Furthermore, McCarthy and

---

[95]     See 10/18/11 Affidavit of Peter Deane, Verizon Manager of Sales Operations for the New York Metro Region, in Support of Defendant's Motion for Summary Judgment ("Deane Aff.") ¶ 19.

[96]     Devlin Dep. at 248:15-16.

[97]     See Scribner Dep. at 6:22.

[98]     See Def. 56.1 ¶ 99.

[99]     Id. ¶ 86.

[100]     Id. ¶ 117.

[101]     See id. ¶ 115.

16

Lambert could not have known of plaintiff's sales for the month of November until December — after they had decided to extend the PIP.[102]

## III.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[103]  "For summary judgment  purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor."[104]  "'A fact is material when it might affect the outcome of the suit under governing law.'"[105]

In a summary judgment setting, "[t]he burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists."[106]  "When

---

[102]     *See id.* ¶ 113.

[103]     Fed. R. Civ. P. 56(a).

[104]     *Sanchez v. Connecticut Natural Gas Co.*, 421 Fed. App'x 33, 34 (2d Cir. 2011) (quoting *Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000)).

[105]     *Carter v. Incorporated Village of Ocean Beach*, 415 Fed. App'x 290, 292 (2d Cir. 2011) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[106]     *Mavrommatis v. Carey Limousine Westchester, Inc.*, No. 10 Civ. 3404, 2011 WL 3903429, at *1 (2d Cir. Sept. 7, 2011) (citing *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994)).

the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence . . . on an essential element of the nonmovant's claim."[107]   In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.  The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[108] and cannot "'rely on conclusory allegations or unsubstantiated speculation.'"[109]

In deciding a motion for summary judgment, a court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"[110]  However, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[111]

---

[107]   *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

[108]   *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[109]   *Id.* (quoting *Federal Deposit Ins. Corp. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

[110]   *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

[111]   *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis removed).

"'The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'"[112]

Summary judgment may be proper even in workplace discrimination cases, which tend to be very fact-intensive, because "'the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials—apply no less to discrimination cases than to other areas of litigation.'"[113]  However, "'[b]ecause direct evidence of an employer's discriminatory intent will rarely be found,' motions for summary judgment in employment discrimination actions should be evaluated with caution."[114]  Nonetheless, a plaintiff bringing a workplace discrimination claim must make more than conclusory allegations in order to defeat a motion for summary judgment.[115]  It is incumbent upon courts to "distinguish between evidence that allows for a reasonable inference of

---

[112]    *Brod*, 653 F.3d at 164 (quoting *Wilson v. Northwestern Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

[113]    *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 Fed. App'x 413, 415 (2d Cir. 2011) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)). *Accord Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

[114]    *Gear v. Department of Educ.*, No. 07 Civ. 11102, 2011 WL 1362093, at *2 (S.D.N.Y. Mar. 30, 2011) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)).

[115]    *See id.*

19

discrimination and evidence that gives rise to mere speculation and conjecture."[116]

And "[a]lthough claims under the NYCHRL are 'more liberally construed than

claims under Title VII and the NYSHRL, the NYCHRL does not alter the kind,

quality or nature of evidence that is necessary to support or defeat a motion for

summary judgment under Rule 56.'"[117]

## B.    NYCHRL

Campbell brings his discrimination claims under the NYSHRL and

the NYCHRL.  The NYCHRL provides, in relevant part, that

> [i]t shall be an unlawful discriminatory practice . . . [f]or an
> employer or an employee or agent thereof, because of the actual
> or perceived age, race, creed, color, national origin, gender,
> disability, marital status, partnership status, sexual orientation or
> alienage or citizenship status of any person, to refuse to hire or
> employ or to bar or to discharge from employment such person or
> to discriminate against such person in compensation or in terms,

---

[116]    *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999).  *Accord Cameron v. Community Aid for Retarded Children, Inc.*, 335 F.3d 60, 63 (2d Cir. 2003) ("'[P]urely conclusory allegations of discrimination, absent any concrete particulars,' are insufficient" to satisfy an employee's burden on a motion for summary judgment) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985) (alteration in original)).  *Accord Jenkins v. New York State Banking Dep't*, Nos. 07 Civ. 6322, 07 Civ. 11317, 2010 WL 2382417 (S.D.N.Y. Sept. 30, 2010).

[117]    *Ballard v. Children's Aid Soc'y*, 781 F. Supp. 2d 198, 211 (S.D.N.Y. 2011) (quoting *Deshpande v. Medisys Health Network, Inc.*, No. 07 Civ. 375, 2010 WL 1539745, at *22 (E.D.N.Y. Apr. 16, 2010)) (quotation marks omitted).  *Accord Julius v. Department of Human Res. Admin.*, No. 08 Civ. 3091, 2010 WL 1253163, at *5 (S.D.N.Y. Mar. 24, 2010).

conditions or privileges of employment.[118]

Courts have previously interpreted the NYCHRL as being coextensive with Title VII and the NYSHRL, but by enacting the Local Civil Rights Restoration Act of 2005 ("Restoration Act"),[119] "the New York City Council . . . rejected such equivalence."[120]   The City Council's passage of the Restoration Act "confirm[ed] the legislative intent to abolish 'parallelism' between the [NYCHRL] and federal and state anti-discrimination law."[121]   The NYCHRL must be construed "independently from and 'more liberally' than [its] federal and state counterparts."[122]   As a result, although interpretations of similar laws may be used, they act only as "a floor below which the City's Human Rights law cannot fall."[123]

Under the Restoration Act, the NYCHRL "explicitly requires an

---

[118]   N.Y.C. Admin. Code § 8-107(1)(a).

[119]   N.Y.C. Local Law No. 85 (2005).

[120]   *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009).  *Accord Buckman v. Calyon Sec. (USA) Inc.*, No. 09 Civ. 6566, 2011 WL 4153429, at *7 (S.D.N.Y. Sept. 13, 2011).

[121]   *Loeffler*, 582 F.3d at 278 (quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 31 (1st Dep't 2009)).

[122]   *Id.*

[123]   *Id.* (emphasis removed).  Because of this, if plaintiff's claims fail under the NYCHRL they necessarily fail under the NYSHRL.

independent liberal construction analysis in all circumstances, even where [s]tate and federal civil rights laws have comparable language."[124]   However, for both discrimination and retaliation claims under the NYCHRL, courts continue to apply the three-step, burden-shifting framework that the Supreme Court articulated in *McDonnell Douglas Corp. v. Green*.[125]   Under the NYCHRL, unlike Title VII, courts must address the "'uniquely broad and remedial' purposes [of the NYCHRL], which go beyond those of counterpart [s]tate or federal civil rights laws."[126]   That said, a plaintiff must still demonstrate "by a preponderance of the evidence that [he] has been treated less well than other employees" due to unlawful discrimination.[127]

Under the *McDonnell Douglas* framework, an employee initially bears the burden of producing evidence sufficient to support a prima facie case of discrimination.[128]   Such evidence need be no more than "minimal" or "de

---

[124]     *Williams*, 872 N.Y.S.2d at 31.

[125]     *See* 411 U.S. 792, 802-03 (1973).

[126]     *Williams*, 872 N.Y.S.2d at 31 (quoting the Restoration Act, N.Y.C. Local Law No. 85).

[127]     *Id.* at 39.

[128]     *See McDonnell Douglas*, 411 U.S. at 802.

minimis."[129]  Once the plaintiff demonstrates a prima facie case, the burden shifts

in the second step to the defendant to articulate a legitimate, nondiscriminatory

reason for the differential treatment.[130]  "[T]he defendant must clearly set forth,

through the introduction of admissible evidence, the reasons for" its actions.[131]  If

the explanation is legitimate and nondiscriminatory, the burden shifts back to the

plaintiff in the third step to demonstrate that the defendant's proffered explanation

is merely a pretext for discrimination.[132]  "[P]laintiff bears the burden of proving

not just pretext, but racial discrimination . . . and thus the burden of pointing the

court to the existence of evidence that would raise a disputed issue of material fact

on this score."[133]

      Notably, in order to raise an issue of fact that is sufficiently material

to defeat a motion for summary judgment, the plaintiff must produce enough

evidence to support a rational finding that the defendant's explanation for the

---

[129]    *See, e.g.*, *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

[130]    *See Ruiz v. County of Rockland*, 609 F.3d 486, 492 (2d Cir. 2005).

[131]    *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981).

[132]    *See Patterson v. County of Oneida, New York*, 375 F.3d 206, 221 (2d Cir. 2004).  *See also Beachum v. AWISCO New York*, 785 F. Supp. 2d 84, 93-94 (S.D.N.Y. 2011).

[133]    *Yarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 561 (S.D.N.Y. 2005).

adverse action is actually a pretext to disguise discrimination.[134]  He is required to do "more than cite to [his] mistreatment and ask the court to conclude that it must have been related to [his] race."[135]

"The factfinder's disbelief of the reasons put forward by the defendant . . . may, together with the elements of the prima facie case, suffice to show intentional discrimination."[136]  The factfinder may disbelieve the defendant's explanation either because the facts underlying the explanation are false or because the explanation is weakened by inconsistencies or logical flaws.[137]  Therefore, the plaintiff can survive summary judgment if he produces facts sufficient to permit a reasonable factfinder to disbelieve the defendant's explanation in favor of the plaintiff's explanation that discrimination occurred.  The plaintiff can sustain this burden by proving that "the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that [the

---

[134]     *See Weinstock*, 224 F.3d at 42.  *See also Mavrommatis*, 2011 WL 3903429, at *2; *Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 283 (S.D.N.Y. 2006).

[135]     *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir. 2001).

[136]     *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  *Accord Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000).

[137]     *See Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 110 (2d Cir. 2001) (stating that summary judgment for defendant was improper where the defendant's stated reasons for its actions lacked credibility due to inconsistencies).

24

adverse employment decision] was motivated at least in part by . . .

discrimination."[138]

### 1.    Statute of Limitations

Campbell's NYSHRL and NYCHRL claims are subject to a three-year statute of limitations.[139]  Plaintiff commenced this action on December 8, 2010.  Therefore, claims regarding events that occurred prior to December 8, 2007 are time barred unless he can show that they were part of a "continuing violation." The continuing violation doctrine — which provides an exception to the general rule barring recovery for acts occurring outside the statute of limitations — is most often applied to Title VII claims, but has been applied to NYCHRL and NYSHRL claims as well.[140]

Under the continuing violation exception, where a "plaintiff has experienced a 'continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last

---

[138]    *Tomassi v. Insignia Fin. Grp.*, 478 F.3d 111, 114 (2d Cir. 2007).

[139]    N.Y. C.P.L.R. § 214(2) (McKinney 2003) (NYSHRL claims); N.Y.C. Admin. Code § 8–502(d) (NYCHRL claims).

[140]    *See Williams*, 872 N.Y.S.2d at 35; *Burmudez v. City of New York*, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011); *Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 278-79 (S.D.N.Y. 2010).

discriminatory act in furtherance of it.'"[141]  The Supreme Court, in *National R.R.*
*Passenger Corp. v. Morgan*, identified the following discrete acts:  "termination,
failure to promote, denial of transfer, [and] refusal to hire . . . ."[142]  Because each
such incident "constitutes a separate actionable 'unlawful employment
practice,'"[143] the Supreme Court refused to apply the continuing violation
exception to discrete, time-barred incidents, even where those incidents were
related to actionable ones.[144]

> In *Williams v. New York City Housing Authority*, a New York
appellate court addressed the continuing violation doctrine in the context of the
NYCHRL, stating "the Restoration Act's uniquely remedial provisions are
consistent with a rule that [does not] penalize[] workers who hesitate to bring an
action at the first sign of what they suspect could be discriminatory trouble . . . ."[145]
However, in applying the continuing violation doctrine, the *Williams* court found
the plaintiff's sexual harassment claims to be time barred because the pre-

---

[141]     *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001) (quoting
*Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992) (alteration in original)).

[142]     536 U.S. 101, 114 (2002).

[143]     *Id.*

[144]     *See id.*

[145]     872 N.Y.S.2d at 35.

26

limitation-period conduct was not sufficiently "joined to actionable conduct within

the limitation period . . . ."[146]

### 2.    Failure to Promote

The courts have yet to establish a test for analyzing failure to promote

claims under the NYCHRL.  To establish a prima facie case of discrimination for

failure to promote under Title VII a plaintiff must show that:  "1) [he] 'is a member

of a protected class;' 2) [his] job performance was satisfactory; 3) [he] applied for

and was denied promotion to a position for which [he] was qualified; and 4) the

position 'remained open and the employer continued to seek applicants.'"[147]  While

bearing in mind the more liberal standards of the NYCHRL, I use this test as a

guide in analyzing plaintiff's failure to promote claims.

### 3.    Hostile Work Environment

"To make out a successful hostile work environment claim, a plaintiff

must show that 'the workplace is permeated with discriminatory intimidation,

ridicule, and insult, that . . . alter[s] the conditions of the victim's employment.'"[148]

---

[146]    *Id.* at 41.

[147]    *Campbell v. Alliance Nat'l, Inc.*, 107 F. Supp. 2d 234, 242 (S.D.N.Y. 2000) (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 (2d Cir. 2000)).

[148]    *Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 262 (E.D.N.Y. 2009) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

In keeping with the more lenient interpretation of the NYCHRL, the *Williams* court held that a plaintiff is no longer required to show "severe and pervasive" conduct to establish a hostile work environment claim under the NYCHRL.[149]  The NYCHRL, though, is not a "'general civility code'"[150] and "petty slights and trivial inconveniences"[151] are not actionable under the NYCHRL.  In determining whether a claim of hostile work environment survives summary judgment, the relevant consideration is whether there is a triable issue of fact as to whether the plaintiff "has been treated less well than other employees because of [his race]."[152]  "'Under the [NYCHRL], liability should be determined by the existence of unequal treatment and questions of severity and frequency reserved for consideration of damages.'"[153]

### 4.    Discriminatory Discharge

Because *McDonnell Douglas* addressed a failure to hire claim,

---

[149]    *See* 872 N.Y.S.2d at 38.

[150]    *Id.* at 40 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (discussing Title VII)).

[151]    *Id.* at 41.

[152]    *Id.* at 39.

[153]    *Selmanovic v. NYSE Group, Inc.*, No. 06 Civ. 3046, 2007 WL 4563431, at *4 (S.D.N.Y. Dec. 21, 2007) (quoting *Farrugia v. North Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 725 (Sup. Ct. N.Y. Co. 2006)).

28

"discharge cases do not fit as neatly under the wording of [its] prima facie case formula."[154]   Courts have adopted various formulations of the fourth prong of the *McDonnell Douglas* prima facie case, ranging from a requirement that the plaintiff show he was replaced by someone outside his protected class,[155] to the Second Circuit's requirement that the plaintiff produce evidence that "creates an inference of discrimination."[156]

Under the Second Circuit's requirements a plaintiff makes out a prima facie case of discriminatory discharge under Title VII if he: "(1) belongs to a protected class, (2) was qualified for the position he held, (3) experienced an adverse employment action, and (4) the adverse employment action occurred under circumstances that give rise to an inference of discrimination."[157]   "An inference of discriminatory intent may be derived from a variety of circumstances, including . .

---

[154]    Lex Larson, Employment Discrimination § 8.08[4].  The original *McDonnell Douglas* test required a plaintiff in a failure to hire case to show: "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802.

[155]    *See, e.g.*, *Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277, 1282 (7th Cir. 1977).

[156]    *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

[157]    *See Ruiz*, 609 F.3d at 491-92.

29

. 'more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."[158]

While some cases have held that "[a] prima facie case of race discrimination under the NYCHRL contains the same elements as those required under Title VII,"[159] treating these statutes identically ignores the effect of the Restoration Act. No court has articulated what supports an inference of discriminatory intent under the more liberal NYCHRL, but that must wait for another day. Where, as here, the employer has offered admissible evidence to support a legitimate, nondiscriminatory reason for its actions, courts need not tarry over the question of whether the plaintiff has made out a prima facie case.[160]

## IV. DISCUSSION

### A. Failure to Promote

The crux of plaintiff's failure to promote claim is that he was treated

---

[158]   *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (quoting *Chambers*, 43 F.3d at 37).

[159]   *Fleming*, 644 F. Supp. 2d at 268.

[160]   *See Bennett v. Health Mgmt. Sys., Inc.*, — N.Y.S.2d —, 2011 WL 6347918, at *6 (1st Dep't Dec. 20, 2011) ("Where a defendant in a discrimination case has moved for summary judgment and has offered evidence in admissible form of one or more nondiscriminatory motivations for its actions, a court should ordinarily avoid the unnecessary and sometimes confusing effort of going back to the question of whether a prima facie case has been made out in the first place.").

unfairly by Devlin and other employees who were controlled by Devlin.  Plaintiff states that Devlin withheld promotions that were awarded to non-African-American employees, but he only submits evidence that he applied for two of these positions.[161]  For the following reasons, plaintiff's failure to promote claims are dismissed.

### 1.    2005:  DM of Manhattan Zone 9 Position

In 2005, plaintiff was not awarded the position of DM of the Manhattan Zone.[162]  Instead, Frank Campbell was given the position[163] and plaintiff became DM of the Westchester/Putnam Zone.[164]  This claim falls outside of the three-year statute of limitations and is therefore time barred because it is not part of a continuing violation.

Failure to promote is a "discrete act" as defined by the Supreme Court in *Morgan*[165] and, therefore, is not governed by the continuing violation exception. Even under the more lenient NYCHRL, the 2005 failure to promote claim is not connected to claims of actionable conduct that occurred during the limitations

---

[161]    *See* Pl. 56.1 ¶¶ 15, 26.

[162]    *See id.* ¶ 15.

[163]    *See* Def. 56.1 ¶ 16.

[164]    *See id.* ¶ 15.

[165]    536 U.S. at 114.

period.[166]  The decision to award the position to Frank Campbell was not made by

Devlin or anyone under his control, as it was not until three years later that Devlin

was hired as Regional President.  Because of this, the 2005 failure to promote

claim is dismissed as time barred.

### 2.     2008:  Director of Regional Sales Position

It is undisputed that plaintiff is a member of a protected class and that

he applied for, but was denied, the promotion to Director of Regional Sales.

However, the position was awarded to Scribner, who is a member of the same

protected class as plaintiff, which "undercuts [his] claim of racial

discrimination."[167]  Furthermore, defendant's stated reason for not awarding the

position to plaintiff — his inferior performance during the interview —[168]

"constitutes a legitimate, non-discriminatory reason."[169]  "'There is nothing

unlawful about an employer's [sic] basing its hiring decision on subjective criteria,

---

[166]     *See Williams*, 872 N.Y.S.2d at 35.

[167]     *Horsford v. Salvation Army*, No. 99 Civ. 5721, 2001 WL 1335005, at
*5 (S.D.N.Y. Oct. 29, 2001) (citing *McCulley v. Southern Conn. Newspapers, Inc.*,
98 F. Supp. 2d 216, 223 (D. Conn. 2000)).

[168]     *See* Devlin Dep. 108:13-18.

[169]     *Bielinski v. Hotel Pierre*, 591 F. Supp. 2d 541, 551 (S.D.N.Y. 2008).

32

such as the impression an individual makes during an interview.'"[170]  Plaintiff fails

to set forth any evidence that he was denied the 2008 promotion to Director of

Regional Sales for racially discriminatory reasons.

### 3.    Other Positions Generally

Campbell lists generally "six other director positions" that he was not

awarded.[171]  However, it is undisputed that plaintiff did not apply for these

positions.[172]  Campbell claims that he was unable to apply because the positions

were not posted, but defendant submits evidence that at least three of the positions

were posted.[173]  If plaintiff "was qualified for the position . . . [y]et he never

applied . . . [he] was never rejected under circumstances that would give rise to an

inference of racial discrimination."[174]

### B.    Discriminatory Transfer

In April 2006, plaintiff was transferred to Brooklyn and McCarthy

---

[170]    *Tucker v. New York City*, 376 Fed. App'x 100, 102 (2d Cir. 2010)
(quoting *Byrnie*, 243 F.3d at 104.).

[171]    Plaintiff's Opposition to Defendant's Motion for Summary Judgment
at 4.

[172]    *See id.*

[173]    *See* McCarthy Aff. ¶¶ 6, 9, 11.

[174]    *Fraser v. Fiduciary Trust Co. Int'l*, No. 04 Civ. 6958, 2009 WL
2601389, at *8 (S.D.N.Y. Aug. 25, 2009).

replaced him in Westchester.  Plaintiff claims that this transfer was made in retaliation for his failure to quell certain union activity, but he does not provide any evidence to connect this transfer to later actions that occurred within the limitations period.  While McCarthy did eventually become plaintiff's supervisor and was responsible for placing plaintiff on the Final PIP, plaintiff does not present facts that connect his 2006 transfer to any allegedly discriminatory treatment that occurred during the limitations period.  For this reason, plaintiff's discriminatory transfer claim is a discrete act, not connected to actionable conduct that occurred during the limitations period, and is therefore time barred.

In July 2009, Campbell was transferred from Manhattan, Zone 9 to Queens.[175]  From the beginning of 2009, plaintiff's sales numbers placed him consistently in the bottom half of the DM score card for all DM's in the New York Metro Area.[176]  Because the primary mechanism for evaluating a DM's performance was the score card,[177] his steadily poor performance was a legitimate basis for removing him from the "visible" Manhattan Zone.[178]

---

[175]     *See* Def. 56.1 ¶ 72.

[176]     *See id.* ¶ 69.

[177]     *See* McCarthy Aff. ¶ 29.

[178]     Am. Compl. ¶ 19.

34

Plaintiff emailed McDonald in June 2009, complaining generally that his transfer to and from Manhattan, Zone 9 was "rigged,"[179] and states that he complained to McDonald in a phone conversation about "race discrimination,"[180] but provides no evidence to support this allegation.  Without more, he has failed to offer sufficient evidence from which a reasonable juror could conclude that defendant's strong showing of legitimate business justification was a pretext.

### C.    Hostile Work Environment

In March 2008, it was discovered that employees in one of plaintiff's stores had tampered with the NPS ratings.[181]  Plaintiff testified that Scribner was very upset over this incident and told plaintiff "he wouldn't take a fall for somebody else's failure to perform . . . ."[182]  Plaintiff stated that Scribner "felt comfortable enough to raise his voice and shout at [him] . . . because [they were] the same complexion . . . ."[183]  In his deposition testimony, however, plaintiff also stated that Scribner yelled at other employees over the same incident and that these

---

[179]    6/23/09 Email from Campbell to McDonald (2:16 PM), Ex. 8 to Pl. 56.1.

[180]    Pl. 56.1 ¶ 72.

[181]    *See* Def. 56.1 ¶ 30.

[182]    Pl. Dep. at 44:5-6.

[183]    *Id.* at 45:14-18.

employees were white, African-American, and Asian.[184]  Thus, the record does not

support an inference that Scribner's shouting was racially motivated.  Nor is there

any allegation that plaintiff's supervisors or fellow employees ever made any

discriminatory remarks to, or about, plaintiff.

Plaintiff alleges, without any factual support, that Devlin adjusted his

sales quota, making it impossible for him to succeed, and transferred him to

Manhattan during the economic downturn to ensure that he would fail.  In addition

to Verizon's evidence showing that Devlin had no influence over the quotas,[185] and

that it was Scribner who transferred plaintiff to Manhattan,[186] there is no evidence

to connect these claims to racial animus.  Where there is no evidence of racial

animus, a hostile work environment claim must fail.[187]

Plaintiff claims that Zone 9 was understaffed as part of the plot to

have his management of this region fail, but defendant provides evidence that, in

---

[184]    *See id.* at 46:4-47:4.

[185]    *See* Simon Aff. ¶ 16; Herman Aff. ¶ 16; Scribner Dep. 158:10-19.

[186]    *See* Scribner Dep. 109:13.

[187]    *See, e.g.*, *Woods v. Enlarged City School Dist. of Newburgh*, 473 F. Supp. 2d 498, 520-21 (S.D.N.Y. 2007) (granting defendant summary judgment on hostile work environment claims because "[o]f the approximately two hundred specific incidents of alleged harassment, only one has racial overtones whatsoever" and that was "clearly insufficient, standing alone, to sustain a hostile work[] environment claim").

light of the economic climate, almost all Zones were understaffed.[188]  This fails to

give rise to an inference of a hostile work environment.  Furthermore, plaintiff

provides no evidence that the months his headcount was under the budgeted

amount, it was racially motivated, especially in light of defendant's evidence that

Zones managed by Caucasian, African-American, and Asian employees were

understaffed more often than plaintiff's Zone.[189]

   Plaintiff has not raised a triable issue of fact as to whether he was

"treated less well than other employees because of [his race]."[190]  In fact, the record

is devoid of any evidence connecting his treatment to race.  As such, his hostile

workplace claim fails.

### D.  Discriminatory Discharge

   Finally, plaintiff claims that he was unfairly placed on PIPs that were

not appropriately administered and that this led to his termination.  Because "[t]he

---

   [188] *See* Deane Aff. ¶¶ 22, 25, 27, 30, 33, 36 (showing the number of
employees reporting to each DM in the New York Metro region, January - June
2009).

   [189] *See id.*  Plaintiff's Zone was understaffed four out of six months from
January to June 2009, whereas the Zone managed by Angelo Demonte (Caucasian)
was understaffed all six months; the Zone managed by Chris Syed (Asian) was
understaffed five out of the six months; and Brian Weatherly (African-American)
was understaffed all six months.

   [190] *Williams*, 872 N.Y.S. 2d at 39.

prima facie case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanized, or ritualistic,'"[191] "'[w]here the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.'"[192] Therefore, under the *McDonnell Douglas* test, the burden shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions.[193]

### 1.   Verizon's Business Justifications

Verizon has provided legitimate business justifications for its decisions to place Campbell on the NPS PIP, the 30-day Overall PIP, and the Final PIP, and to terminate his employment.  To satisfy its burden, "the defendant must simply present clear and specific non-discriminatory reasons for its actions."[194] Plaintiff was placed on the NPS PIP after a surprise visit to one of his stores by Devlin and Small revealed that one of plaintiff's employees was unfamiliar with

---

[191]   *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)).

[192]   *Bennett*, 2011 WL 6347918, at *5 (quoting *Aikens*, 460 U.S. at 715).

[193]   *See Parrilla v. City of New York*, No. 09 Civ. 8314, 2011 WL 611849, at *11 (S.D.N.Y. Feb. 16, 2011).

[194]   *Bernard v. J.P. Morgan Chase Bank, N.A.*, No. 08 Civ. 4784, 2010 WL 423102, at *6 (S.D.N.Y. Feb. 5, 2010).

NPS.[195]  After a meeting with plaintiff, Devlin was unimpressed with plaintiff's

understanding of NPS[196] and Devlin instructed Scribner to "look into it."[197]  NPS

reflects customer satisfaction and is "[g]iven high importance"[198] at Verizon.

Therefore, placing plaintiff on an NPS-specific PIP was a legitimate response.

   The primary mechanism for evaluating a DM's performance was the

score card.[199]  Thus, plaintiff's steadily poor performance in 2009[200] was a

legitimate basis for placing him on the 30-day Overall and Final PIPs.  After

plaintiff failed to meet the goals established in the Final PIP, he was terminated.[201]

Because Verizon had legitimate business reasons for each of these actions, the

burden shifts back to the plaintiff to show that the reasons offered are pretextual.

### 2. Evidence of Pretext

   Pretext can be shown "either directly by persuading the court that a

discriminatory reason more likely motivated the employer or indirectly by showing

---

[195] *See* Def. 56.1 ¶¶ 87, 89.

[196] *See id.* ¶ 90.

[197] Devlin Dep. at 243:18-19.

[198] Def. 56.1 ¶ 91.

[199] *See* McCarthy Aff. ¶ 29.

[200] *See* Def. 56.1 ¶ 69.

[201] *See id.* ¶ 125.

that the employer's proffered explanation is unworthy of credence."[202]  Plaintiff

has not provided any evidence to support his contention that Verizon's decision to

terminate him was "more likely motivated by discrimination" rather than by his

failure to meet the sales quotas.

Plaintiff counters defendant's reason with evidence that he received

bonuses for his performance under the MBO rubric, which could cast doubt over

defendant's explanation.  However, defendant offered evidence that the MBO

metric compares plaintiff only to his own prior performance, making it possible to

receive MBO bonus payments while still failing to meet the sales quotas.[203]

Additionally, "plaintiff offers no evidence of a causal connection to

race, and [his] conclusory statements are not enough to overcome the defendant's

non-discriminatory explanation"[204] that plaintiff's placement on PIPs and his

ultimate termination resulted from his failure to meet his sales quotas.  Plaintiff's

argument that the sales quotas were formulated unfairly to discriminate against him

based on his race is similarly unavailing.  Campbell provides no evidence to

support the allegation that Devlin adjusted the sales quotas to ensure that plaintiff

---

[202]    *Burdine*, 450 U.S. at 256.

[203]    *See* Def. Reply at 9 (citing McCarthy Aff., ¶ 6).

[204]    *Jenkins*, 2010 WL 2382417, at *8.

would not meet them.  By contrast, defendant provides two affidavits from employees who were involved in the quota-setting process, explaining the process by which quotas are established and stating that Devlin took no part in it.[205]

The record provides no evidence that African-American employees were treated differently than others.[206]  While plaintiff claims that he was the only DM in the New York Metro Area to have been placed on a PIP, Verizon provided evidence that Betty Simon (a Caucasian) was also placed on a PIP in 2004.[207] Plaintiff's argument, therefore, is unavailing.

Plaintiff states that other DM's ranked lower than he did in any given month, but defendant provides evidence that Campbell's DM score card ranking was tenth or lower for eleven months in 2009, more often than any other DM in the same region.[208]  Given that plaintiff was placed on a series of PIPs outlining

---

[205]     *See* Simon Aff. ¶ 16; Herman Aff. ¶ 16

[206]     *See Ochei*, 450 F. Supp. 2d at 284 (where plaintiff did not allege differential treatment of black nurses, the court held "the conclusory allegations set forth in the complaint of race discrimination are insufficient to support a finding of race discrimination").

[207]     *See* Def. 56.1 ¶ 105.  Because Simon's PIP was not signed, plaintiff argues that there is no proof that the PIP was actually implemented, but plaintiff was placed on three separate PIPS, none of which he signed.  *See* Exs. 9, 14, 11 to Dayan Decl.

[208]     *See* Def. Reply at 7.

41

performance goals, which he failed to meet, plaintiff's claim of discriminatory

discharge is not persuasive. "In the absence of evidence of disparate treatment,

plaintiff must submit some evidence that creates a genuine issue as to whether

plaintiff's termination was motivated by racial bias or animus."[209]  Plaintiff has

offered no such evidence.

## V.    CONCLUSION

For the foregoing reasons, defendant's motion for partial summary

judgment is granted.  The Clerk of the Court is directed to close this motion

[docket # 33].  A conference is scheduled for February 15 at 4:00 pm in Courtroom

15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.


Dated:      New York, New York
            February 7, 2012

---

[209]    *Woods*, 473 F. Supp. 2d at 525-26.

42

## Appearances

**For Plaintiff:**

Derek S. Sells, Esq.
The Cochran Firm
233 Broadway, 5th Floor
New York, NY 10279
(212) 553-9120


**For Defendant:**

Raymond G. McGuire, Esq.
Lisa E. Dayan, Esq.
Kauff, McGuire & Margolis, LLP
950 Third Avenue, 14th Floor
New York, NY 10022
(212) 644-1010