UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

PATRICK "TONY" CAMPBELL,

                Plaintiff,

        - against -

CELLCO PARTNERSHIP d/b/a/
VERIZON WIRELESS, INC.,

               Defendant.

------------------------------------------------ X

**OPINION AND ORDER**

10 Civ. 9168

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

        Patrick "Tony" Campbell brings this diversity action against Cellco Partnership d/b/a Verizon Wireless, Inc. ("Verizon"). On May 17, 2012, a jury returned a verdict in favor of Campbell on his retaliation claim under the New York City Human Rights Law ("NYCHRL"). Verizon now moves for judgment as a matter of law or, in the alternative, a new trial, and remittitur of the $200,000 awarded to Campbell for emotional distress. For the reasons set forth below, Verizon's motion is granted in part and denied in part.

## II.    BACKGROUND

        The background to this motion is set forth in the summary judgment

1

opinion.[1]  This case was tried to a jury in May of this year.  At the trial, Campbell

testified that in June 2009 he complained about racial discrimination to Marielena

McDonald in Verizon's Human Resources Department and to Mike Scribner, his

immediate supervisor.[2]  He made an official complaint in October 2009 to Eileen

Lambert in Human Resources.[3]  Human Resources did not investigate these

complaints in violation of company policy.[4]  Campbell further testified that,

following the June complaints, he became the first Verizon district manager

("DM") in at least three years to be placed on a performance improvement plan

("PIP"),[5] although there were DMs with lower performance evaluation scores.[6]

The PIP was extended from thirty days to sixty days.[7]  Campbell also testified that

---

[1]      *See Campbell v. Cellco P'ship*, — F. Supp. 2d — , No. 10 Civ. 9168, 2012 WL 400959, at * 1–4 (S.D.N.Y. Feb. 7, 2012).

[2]      *See* Trial Transcript ("Tr.") at 189–193.

[3]      *See id.* at 194, 232.

[4]      *See id.* at 467, 474; Plaintiff's Memorandum of Law in Opposition to Judgment as a Matter of Law or, in the Alternative, a New Trial, and Remittitur ("Pl. Mem.") at 4.

[5]      *See* Tr. at 462.

[6]      *See* 2009 Verizon Scorecards ("Scorecards"), Ex. 8 to 6/22/12 Declaration of Lisa E. Dayan, defendant's counsel (Dayan Decl.), at D001486–D001507.

[7]      *See* Tr. at 601–602.

in August 2009, he received a very low evaluation, unlike any he had received before.[8]  Campbell was terminated in August 2010.[9]

Verizon counters that Campbell was placed on a PIP and ultimately terminated because of his failing performance in 2009 and 2010.[10]  Verizon also argues that the PIP was extended to give Campbell more opportunities to alter his performance,[11] and, in any event, Campbell could have been placed on a PIP if he fell anywhere in the bottom half of the rankings.[12]

## III.   LEGAL STANDARD

### A.   Motion for Judgment as a Matter of Law Under Rule 50 and Motion for a New Trial Under Rule 59

A court may render judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on

---

[8]     *See id.* at 222.

[9]     *See* Pl. Mem. at 6 n.1.

[10]    *See* Defendant's Memorandum of Law in Support of Judgment as a Matter of Law or, in the Alternative, a New Trial, and Remittitur ("Def. Mem.") at 13.

[11]    *See id.*

[12]    *See id.*

that issue."[13]  The standard for granting judgment as a matter of law "mirrors" the

standard for granting summary judgment.[14]  Accordingly, in ruling on such a

motion, the trial court is required to

> consider the evidence in the light most favorable to the party
> against whom the motion was made and to give that party the
> benefit of all reasonable inferences that the jury might have drawn
> in his favor from the evidence.  The court cannot assess the weight
> of conflicting evidence, pass on the credibility of the witnesses, or
> substitute its judgment for that of the jury.[15]

A jury verdict cannot be set aside lightly.  A court may not grant judgment as a

matter of law unless (1) there is such a "'complete absence of evidence supporting

the verdict that the jury's findings could only have been the result of sheer surmise

and conjecture'" or (2) there is "'such an overwhelming amount of evidence in

favor of the movant that reasonable and fair minded [persons] could not arrive at a

verdict against [it].'"[16]

----

[13]    Fed. R. Civ. P. 50(a)(1).

[14]    *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150
(2000) (quotation marks and citations omitted); *Zellner v. Summerlin*, 494 F.3d
344, 371 (2d Cir. 2007).

[15]    *Tolbert v. Queens Coll.*, 242 F.3d 58, 70 (2d Cir. 2001) (quotation
marks and citation omitted).  *Accord Caceres v. Port Authority of N.Y. and N.J.*,
631 F.3d 620, 622 (2d Cir. 2011).

[16]    *Altria Grp., Inc. v. United States*, 658 F.3d 276, 290 (2d Cir. 2011)
(quoting *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 79 (2d Cir. 2006)).

The legal test for granting a new trial is less stringent than for granting judgment as a matter of law.  "Unlike a motion for judgment as a matter of law, a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict."[17]  Nevertheless, in practice courts do not grant new trials as freely as the language suggests.  "'A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'"[18]

Under Federal Rule of Civil Procedure 50(b):

[n]o later than 28 days after the entry of judgment . . . the movant may file a renewed judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59 . . . [—i]n ruling on the renewed motion, the court may:  (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct entry of judgment as a matter of law.

## B.     Remittitur

"'If a district court finds that a verdict is excessive, it may order a new trial, a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages

---

[17]     *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 54 (2d Cir. 2000) (quotation marks and citation omitted).

[18]     *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 51 (2d Cir. 2012) (quoting *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 106 (2d Cir. 2002)).

in a reduced amount.'"[19]   A district court must apply New York law to evaluate whether awards in cases decided under New York law are excessive.[20]   Pursuant to Section 5501(c) of the New York Civil Practice Law and Rules ("CPLR"), a court should reduce an award when it "deviates materially" from "reasonable compensation."[21]   "[The New York] standard is less deferential to the jury and thus more favorable to the party challenging the award than is the federal 'shocks the conscience' [standard]."[22]

## IV.   APPLICABLE LAW

### A.   NYCHRL

Retaliation claims under NYCHRL are analyzed under the "burden-shifting" framework set forth by the Supreme Court in *McDonnell*

---

[19]   *Lee v. Edwards*, 101 F.3d 805, 808 (2d Cir. 1996) (quoting *Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 (2d Cir. 1995)).

[20]   *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 437 (1996); *Brady v. Wal–Mart Stores, Inc.*, 531 F.3d 127, 137 (2d Cir. 2008).

[21]   N.Y. C.P.L.R. § 5501(c). *See Patterson v. Balsamico*, 440 F.3d 104, 119 (2d Cir. 2006) (holding that although Section 5501 directs the appellate division to review whether a jury's award is excessive, under federal law, which controls the role of trial and appellate courts in the federal system, "primary responsibility for application of § 5501(c)'s deviates materially check is lodge[d] in the district court, not the court of appeals") (quotation marks and citations omitted).

[22]   *Gasperini v. Center for Humanities, Inc.*, 149 F.3d 137, 140 (2d Cir. 1998).

*Douglas Corp. v. Green*.[23]  To establish a prima facie case of retaliation, a plaintiff

must show that:  (1) he was engaged in a protected activity, *e.g.*, by opposing an

unlawful practice; (2) his employer was aware of this activity; (3) he suffered an

adverse employment action; and (4) there is a causal connection between the

protected activity and the adverse employment action (in other words, that a

retaliatory motive played a part in the adverse action).[24]  Within the context of the

third element, an adverse employment action is an action "reasonably likely to

deter a person from engaging in protected activity."[25]

　　　　With regard to the final element, "'causation can be shown either: (1)

indirectly, by showing that the protected activity was followed closely by

discriminatory treatment, or through other circumstantial evidence such as

_____

[23]　　*Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) ("This Court has determined that a plaintiff's discrimination claims under both the NYSHRL and the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII.").

[24]　　*See Kessler v. Westchester Cnty. Dep't of Social Servs.*, 461 F.3d 199, 205–06 (2d Cir. 2006).

[25]　　*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723 (2d Cir. 2010).  Title VII's prohibition on retaliation requires a *materially* adverse action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).  Articulating the difference between a non-material adverse action that is reasonably likely to deter a person from complaining (NYCHRL) and a material adverse action that could well dissuade a reasonable person from complaining (Title VII) remains an unanswered question.

disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"[26]  If a plaintiff establishes a prima facie case of retaliation, a presumption of retaliation arises and the case proceeds to the second step of the *McDonnell Douglas* framework.[27]

> Under the second step,
>
> the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. . . . [A]s for the third step, once an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action."[28]

## V.   DISCUSSION

### A.   Prima Facie Case

I cannot conclude as a matter of law that Campbell failed to establish a prima facie case of retaliation.  The jury was entitled to credit Campbell's version

---

[26]   *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

[27]   *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) ( "If the plaintiff [establishes a prima facie case of retaliation], the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action.") (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

[28]   *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citations omitted).

of events.[29]

### 1.    Protected Activity

Campbell testified that he made an official complaint of race discrimination in October 2009[30] — testimony that was corroborated by Lambert[31] — and informal complaints to McDonald and Scribner in June 2009.[32]  Campbell presented a number of factors that support the assertion that his complaints were made in good faith:  (1) Campbell perceived that he had insufficient staff in the Manhattan stores, (2) he lost two stores in Manhattan, and (3) the complaints made in June were never forwarded by McDonald to her superior.[33]  Although other DMs

---

[29]    *See Khan v. Hip Centralized Lab. Servs., Inc.*, No. 03 Civ. 2411, 2008 WL 4283348, at *4–5 (E.D.N.Y. Sept. 17, 2008) (finding that although the jury verdict was "surprising," the jury was entitled to make its own judgments about the credibility of the witnesses); *Hubbard v. No Parking Today, Inc.*, No. 08 Civ. 7228, 2010 WL 3835034, at *8 (S.D.N.Y. Sept. 22, 2010) (finding that where the content of a conversation between plaintiff and defendant was disputed, the jury was entitled to make a determination that either party's testimony was credible).

[30]    *See* Tr. at 231–232.

[31]    *See id.* at 505–506.

[32]    *See id.* at 189–193.  *See also Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 (2004) (protected activity consists of "opposing or complaining about unlawful discrimination"); *Lambert v. Macy's East, Inc.*, No. 25547/05, 2010 WL 8434889, at *13 (Sup. Ct. N.Y. Co. Apr. 30, 2010) (finding that complaints to the Human Resources Department and informal actions such as refusing to comply with a request constitute protected activity).

[33]    *See* Tr. at 180–183, 467.

may have experienced both understaffing and store closings, viewing the evidence in the light most favorable to Campbell, his complaints of race discrimination were made in good faith — particularly if he was unaware of the treatment of the other DMs.[34]

## 2.    Knowledge

Campbell testified that John McCarthy (Scribner's replacement), Lambert, McDonald, and the legal department were aware of the complaints.[35] Plaintiff correctly argues that general corporate knowledge satisfies this element.[36]

---

[34]     *See Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)) ("A plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful 'so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'") (quoting *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)). *See also Locicero v. New York City Transit Auth.*, No. 06 Civ. 4793, 2010 WL 5135875, at *3 (E.D.N.Y. Dec. 9, 2010) (finding that complaints were made in good faith where plaintiff had complained after failing to receive certain promotions, although there were no explicit comments made about her gender or age); *Spiegler v. Israel Discount Bank of N.Y.*, No. 01 Civ. 6364, 2003 WL 21488040, at *12 (S.D.N.Y. June 25, 2003) (finding that plaintiff made good faith complaints of age discrimination after meeting a younger competitor and, at the same time, experienced a reduced workload). Defendant argues that Campbell was made aware *at trial* of the similar treatment of other DMs. *See* Def. Mem. at 6. But that does not retroactively mean that his comments were made in "bad faith."

[35]     *See* Tr. at 189–193, 977, 1037.

[36]     *See Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 147–48 (2d Cir. 2010) ("'Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate

### 3. Adverse Employment Actions

Campbell has offered four compelling adverse employment actions, which occurred close to the June and October 2009 complaints.[37] *First*, Campbell was placed on a PIP following his official complaint, although lower ranked DMs were not.[38] *Second*, his PIP was extended to sixty days.[39] *Third*, Campbell's official complaint was never investigated in violation of company policy.[40] *Fourth*, he received a negative performance review in August after complaining to

---

knowledge that the plaintiff has engaged in a protected activity.'") (quoting *Gordon*, 232 F.3d at 116). "A jury . . . can find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge." *Gordon*, 232 F.3d at 117.

[37]    *See Ibok v. Securities Indus. Automation Corp.*, 369 Fed. App'x 210, 214 (2d Cir. 2010) (finding that plaintiff established a prima facie case of retaliation when he suffered "adverse actions in the form of warnings, a negative performance review, the elimination of his shift, and, ultimately, his firing"); *Williams v. New York City Housing Auth.*, 872 N.Y.S.2d 27, 70 (1st Dep't 2009) ("While the [Title VII material adversity standard was] similar to that set forth in § 8–107(7) . . . the confusing use of the term 'materially adverse' might lead some courts to screen out some types of conduct prior to conducting [a] 'reasonably likely to deter' analysis. In fact, to reiterate, § 8–107(7) specifically rejects a materiality requirement.") (citing NYCHRL § 8-107).

[38]    *See* Tr. at 162; *See* Scorecards, at D001486–D001507.

[39]    *See* Tr. at 601–602.

[40]    *See id.* at 467

11

his supervisor in June.[41]

### 4.    Causation

There was sufficient temporal proximity between the pre-termination adverse employment actions and the June and October complaints to allow the jury to indirectly infer causation.[42]   Campbell's PIP placement occurred immediately following the October complaints.[43]   The PIP was extended within a month of the October complaints.[44]   None of Campbell's complaints were ever investigated.[45] He recieved the negative review within three months of the June complaint.[46]

### B.    Verizon's Non-Retaliatory Reasons

---

[41]    *See id.* 189–193, 222.

[42]    *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close' . . . .") (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001).  *See also  Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (finding that a jury could infer causation from a two-week gap between a complaint and an adverse employment action); *Bagley v. J.P. Morgan Chase & Co.*, No. 10 Civ. 1592, 2012 WL 2866266, at *10 (S.D.N.Y. July 12, 2012) (holding that less than three months was sufficient temporal proximity to support a prima facie case of retaliation).

[43]    *See* Tr. at 501.

[44]    *See id.* at 602.

[45]    *See id.* at 467, 474, 577.

[46]    *See id.* at 189–193, 222.

Verizon has offered sufficient non-retaliatory reasons to satisfy its burden at the second level of the *McDonnell Douglas* framework.[47] Verizon argues that Campbell was an ineffective manager and that he could not fulfill his quotas.[48]

### C.   Plaintiff Has Demonstrated Retaliation Was a Substantial Reason for the Adverse Employment Actions

Plaintiff has offered sufficient evidence to permit the jury to find that retaliation was a substantial reason for the adverse employment actions.[49] *First,*

---

[47]    *See Beaumont v. Cablevision Sys. Corp.*, No. 10 Civ. 3585, 2012 WL 1158802, at *7 (E.D.N.Y Apr. 9, 2012) (finding legitimate non-retaliatory reasons where defendant offered evidence that plaintiff was underperforming compared to his colleagues); *Debell v. Maimonides Med. Ctr.*, No. 09 Civ. 3491, 2011 WL 4710818, at *9 (E.D.N.Y. Sept. 30, 2011) (finding that defendants satisfied prong two of the *McDonnell Douglas* framework when they proffered evidence demonstrating that they terminated plaintiff due to poor performance predating plaintiff's FMLA claim).

[48]    *See* Def. Mem. at 13.

[49]    *See Ibok*, 369 Fed. App'x at 214 (finding that plaintiff produced sufficient evidence to satisfy prong three of the *McDonnell Douglas* framework where:  (1) a strong temporal relationship existed between the protected activity and the adverse employment actions, (2) a bad performance review followed consistently good reviews, and (3) the alleged harassers had produced most of the evidence of plaintiff's poor performance — the non-retaliatory reason given for plaintiff's termination).  *See also Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159 (S.D.N.Y. 2011) (finding a material dispute of fact regarding whether defendant's non-retaliatory reasons (cutting costs, restructuring, and plaintiff's poor performance) were pretextual where:  (1) plaintiff was the only person transferred out of a supposedly restructured unit, (2) complaints about plaintiff's "communication problems" immediately followed his complaints, (3) the decision

13

defendants provide no explanation for placing Campbell on a PIP when no other low-scoring DMs were subjected to a PIP.[50]  *Second*, plaintiff received his first bad review after several years of good reviews only after he complained in June.[51] *Third*, defendants provide no explanation for the lack of investigation into plaintiff's complaint.[52]  *Fourth*, plaintiff has put forth evidence suggesting that he was doing well during the PIP — ranking first in November — yet the PIP was extended immediately following this ranking.[53]

Given these factors, I cannot conclude as matter of law that a reasonable jury could not find for Campbell.[54]  Thus, the verdict is not clearly

---

to fire plaintiff was made only after the complaint was filed, (4) there was no evidence that cost-cutting was a motivating factor in plaintiff's termination, and (5) plaintiff's superiors "belittled" his complaint).

[50]    *See* Def. Mem. at 13–14.

[51]    *See* Tr. at 222.

[52]    *See* Def. Mem. at 12–16.

[53]    *See* Tr. at 264.

[54]    *See Williams*, 836 F. Supp. 2d at 181 (finding that a retaliation claim could survive summary judgment where there were inconsistencies in defendant's non-retaliatory reasons, a close temporal proximity, and plaintiff's complaints were given "short shrift"); *Thomas v. Euro RSCG Life*, 739 F. Supp. 2d 630, 635 (S.D.N.Y. 2010) (finding that a retaliation claim was supported, if weakly, by evidence of weekly transfers beginning after plaintiff's complaint); *Boyle v. HSBC Bank, USA, Inc.*, No. 08 Civ. 11358, 2010 WL 235001, at *6 (S.D.N.Y. Jan. 19, 2010) (finding a retaliation claim was supported by a close temporal proximity between plaintiff's demotion and his complaint and non-age related — but

erroneous or a miscarriage of justice.

### D.     Evidentiary Rulings

Defendant has argued that the following erroneous evidentiary rulings contributed to the verdict:  (1) denial of defendant's motion *in limine* seeking to exclude Campbell's testimony about unfair treatment and performance evaluations prior to the date of Campbell's complaints, and (2) preclusion of the substance of the complaints made against Campbell by other Verizon employees.[55]  Campbell was allowed to testify about earlier unfair treatment and good performance evaluations because he sought to demonstrate his employer's state of mind,[56] as well as distinguish the poor report made after his complaints.[57]  In addition,

---

negative — email comments).

[55]      *See* Def. Mem. at 16–21.

[56]      *See McPherson v. New York City Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) ("[Plaintiff ] is attacking the *reliability* of the evidence supporting [defendant's] conclusions . . .  however, we are decidedly not interested in the truth of the allegations against plaintiff . . . [but] in what 'motivated the employer . . . .'") (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)).

[57]      *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 128 (2d Cir. 1996) (allowing plaintiff to rely on evidence of pre-complaint positive performance reports and a post-complaint report to support a retaliation claim).  *See also Frank v. Lawrence Union Free Sch. Dist.*, 688 F. Supp. 2d 160, 173 (E.D.N.Y. 2010) (finding that positive pre-complaint reviews followed by an unscheduled supervisor visit and a negative review demonstrated a causal connection between the plaintiff's complaint and the negative performance review).

Verizon was allowed to submit a large amount of evidence concerning complaints made against Campbell.[58]  Neither of Verizon's evidentiary complaints provides a compelling basis to overturn the jury verdict.

### E.     Emotional Distress Damages Are Reduced to $125,000

Verizon argues that the $200,000 awarded to Campbell for emotional distress is atypical and inappropriate because plaintiff did not testify as to the magnitude and duration of his emotional distress.[59]  Campbell testified that he felt financially strained, had difficulty sleeping, was unnerved, and suffered a loss of dignity.[60]  Where there is no medical corroboration of the plaintiff's testimony as to emotional distress or evidence of physical effects, the Second Circuit generally upholds emotional distress damages that are $125,000 or less and reduces awards of greater than $125,000.[61]  Thus, the denial of a new trial is conditioned upon

---

[58]     *See* Pl. Mem. at 16–18.

[59]     *See* Def. Mem. at 23.

[60]     *See* Tr. at 294–195.

[61]     *See Lore v. City of Syracuse*, 670 F.3d 127, 177 (2d Cir. 2012) (finding that $150,000 in emotional distress damages was warranted where plaintiff and plaintiff's mother testified that plaintiff suffered from medically-diagnosed depression and stopped seeking advancement, and noting that the Second Circuit has upheld only $125,000 in emotional distress damages in the absence of medical corroboration); *Thorsen v. County of Nassau*, 722 F. Supp. 2d 277 (E.D.N.Y. 2010) ("'In garden variety emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who

Campbell's acceptance of a reduction in emotional distress damages to $125,000.

## VI. CONCLUSION

Based on the foregoing, Verizon's motion is granted in part and denied in part. The Clerk of the Court is directed to close this motion (Docket No. 132). A conference is scheduled for August 15, at 4:30 p.m. in Courtroom 15C.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 6, 2012

----

describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury . . . [g]arden variety emotional distress claims generally merit $30,000 to $125,000 awards.'") (quoting *Olsen v. County of Nassau*, 615 F. Supp. 2d 35, 46–47 (E.D.N.Y. 2009)); *Lynch v. Town of Southampton*, 492 F. Supp. 2d 197, 206–07 (E.D.N.Y. 2007) (remitting an award of $251,000 to $50,000 and recognizing that the Second Circuit does not uphold emotional distress damages in adverse employment actions when they exceed $125,000).

17

**-Appearances-**

**For Plaintiff:**

Derek S. Sells, Esq.
The Cochran Firm
The Woolworth Building
233 Broadway, 5th floor
New York, New York 10279
(212) 553-9120

**For Defendant:**

Raymond G. McGuire, Esq.
Lisa E. Dayan. Esq.
Kauff McGuire & Margolis LLP
950 Third Avenue, 14th Floor
New York, New York 10022
(212) 644-1010